

I N T H E

# Court of Appeals of Indiana

Pious Trans, Inc., Gagandeep Singh, and Yadwinder Singh,

*Appellants-Plaintiffs*

v.

Certain Underwriters at Lloyd's London,

*Appellees-Defendants*

April 22, 2024

Court of Appeals Case No.
23A-PL-3044

Appeal from the Hancock Circuit Court

The Honorable Cody B. Coombs, Magistrate

Trial Court Cause No.
30C01-2206-PL-859



**Opinion by Judge Bradford**
Chief Judge Altice and Judge Felix concur.

**Bradford, Judge.**

## Case Summary

[1] In July of 2020, Pious Trans, Inc., which is owned and operated by Gagandeep Singh, hired Yadwinder Singh ("Singh"), who had been issued a New York Class A commercial driver's license ("CDL") approximately sixteen months previously. In December of 2020, Certain Underwriters at Lloyd's, London ("Underwriters"), issued a physical-damage insurance policy to Pious ("the Policy"). In April of 2021, Pious added Singh and a tractor-trailer with a gross weight of over 26,001 pounds ("the Freightliner") to their Policy coverage. In August of 2023, Singh was operating the Freightliner and was involved in a collision with another tractor-trailer. After Underwriters denied Pious's claim arising from the collision, Pious, Gagandeep, and Singh ("Appellants") sued the other driver for negligence and Underwriters and Pious's insurance agent for breach of contract and bad-faith denial of their claim. Underwriters moved for summary judgment on the questions of coverage and bad faith, which motion the trial court granted. We affirm.

## Facts and Procedural History

[2] On July 6, 2020, Pious hired Singh, who held a Class A CDL (issued to him by New York on February 22, 2019) as a driver. Singh's Class A CDL permitted him to operate any motor vehicle or combination of vehicles, including tractor-trailers. On December 10, 2020, Underwriters issued the Policy to Pious, which included a "Driver Criteria Conditions Endorsement" that provides, in part, as follows:

This Insurance shall not indemnify the Insured for loss or damage to any Automobile as insured by and otherwise recoverable under this Policy unless the Automobile is driven or operated by or under the care, custody or control by a driver who at inception of this Policy or at the date of hire, **whichever is the later, provides <u>documented</u> evidence of an MVR**[1] **not more than 60 days old or not older than the date of loss if the driver is involved in a claim showing that they:**

[….]

2. Have a minimum two (2) years (twenty-four (24) consecutive months) of Commercial Driver's License experience, at the time of policy inception or date of hire, whichever is the later, driving similar equipment to that insured under this Policy.

Appellants' App. Vol. II p. 53 (emphasis in original). On April 23, 2021, Pious added the Freightliner as a scheduled vehicle and Singh as a scheduled driver but incorrectly listed his hire date as April 1, 2021, instead of July 6, 2020.

[3] On August 3, 2021, Singh was stopped in traffic on Interstate 70 in Greenfield when he was struck by a tractor-trailer driven by Nigusie Melaku. After filing and withdrawing an initial claim with Underwriters, Pious reopened the matter and, on February 7, 2022, the Littleton Group (on behalf of Underwriters) issued a denial letter to Pious, which indicated that there was no coverage because Singh had not had the required two years of CDL experience at the time the Policy had been issued.[2]

---

[1] An MVR is a "motor vehicle record."

[2] While the claim was also denied on the basis that Pious had misrepresented Singh's hire date in violation of the Policy, Underwriters did not raise this in the trial court as a ground for the entry of summary judgment.

On June 28, 2022, Appellants sued Melaku for negligence and Pious's insurance agent and Underwriters for breach of contract and bad-faith denial of their claim. Underwriters moved for summary judgment on the coverage claim, arguing that the undisputed facts established that the loss was not covered because Singh had not met the Policy's driver-qualification requirements. Appellants responded that Singh had satisfied the Policy's experience requirement on the bases that (1) a New-York-issued Class E operator's license, which he had held since 2002, was equivalent to a CDL and (2) Singh had operated vehicles similar to those insured by the Policy. Alternatively, Appellants argued the Policy's terms (specifically, "Commercial Driver's License" and "similar equipment") were ambiguous and should be construed in favor of coverage. Appellants also alleged that the evidence established that Underwriters had acted in bad faith as a matter of law. On November 13, 2023, the trial court entered summary judgment in Underwriters' favor.

## Discussion

When reviewing the grant or denial of a summary judgment motion, we apply the same standard as the trial court. *Merchs. Nat'l Bank v. Simrell's Sports Bar & Grill, Inc.*, 741 N.E.2d 383, 386 (Ind. Ct. App. 2000). Summary judgment is appropriate only where the evidence shows that there is no genuine issue of material fact, and the moving party is entitled to a judgment as a matter of law. *Id.*; Ind. Trial Rule 56(C). To prevail on a motion for summary judgment, a party must demonstrate that the undisputed material facts negate at least one

element of the other party's claim. *Merchs. Nat'l Bank*, 741 N.E.2d at 386. Once the moving party has met this burden with a prima facie showing, the burden shifts to the nonmoving party to establish that a genuine issue does in fact exist. *Id*. The party appealing the summary judgment bears the burden of persuading us that the trial court erred. *Id*. "In determining whether there is a genuine issue of material fact precluding summary judgment, all doubts must be resolved against the moving party and the facts set forth by the party opposing the motion must be accepted as true." *Lawlis v. Kightlinger & Gray*, 562 N.E.2d 435, 438–39 (Ind. Ct. App. 1990), *trans. denied*.

## I.    Coverage

Resolution of Appellants' coverage claim requires us to examine the provisions of the Policy. Generally, insurance contract provisions are subject to the same rules of interpretation and construction as are other contract terms. *Sharp v. Ind. Union Mut. Ins. Co.*, 526 N.E.2d 237, 239 (Ind. Ct. App. 1988) (internal citation omitted), *trans. denied*. If a contract is clear and unambiguous, the language of the contract must be given its plain meaning. *Id*. (internal citation omitted). Ambiguous terms in an insurance policy, however, will be construed against the insurer, particularly where a policy excludes coverage. *Hoosier Ins. Co. v. Audiology Found. of Am.*, 745 N.E.2d 300, 307 (Ind. Ct. App. 2001), *trans. denied*. A contractual term is not rendered ambiguous by the mere fact that the parties differ as to its meaning, *Haag v. Castro*, 959 N.E.2d 819, 821–22 (Ind. 2012), and the fact "that a policy does not define a term does not necessarily make the term ambiguous." *Id*. at 821. Rather, insurance policy provisions are ambiguous

only if they are "susceptible to more than one **reasonable** interpretation." *Id.* (quoting *Holiday Hosp. Franchising, Inc. v. AMCO Ins. Co.*, 983 N.E.2d 574, 578 (Ind. 2013)) (emphasis added by *Haag*).

[7] As mentioned, in order for Singh's accident to be covered by the Policy, it would have to be established that he had had "a minimum two (2) years […] of Commercial Driver's License experience, at the time of policy inception or date of hire, whichever is the later, driving similar equipment to that insured under this Policy." Appellants' App. Vol. III p. 63. Appellants' first argument is that the actual inception date of the Policy was April 23, 2021, or the date on which Singh was added by Endorsement 31. Consequently, the argument goes, Singh had more than two years of CDL experience at the inception of the Policy, as he had received his CDL in February of 2019. As Underwriters point out, however, Appellants are making this argument for the first time on appeal and have therefore waived it for appellate consideration. Issues not raised before the trial court on summary judgment cannot be argued for the first time on appeal and are waived. *Huntington v. Riggs*, 862 N.E.2d 1263, 1269 (Ind. Ct. App. 2007), *trans. denied*.

[8] Appellants also argue that (1) the Policy term "commercial" is ambiguous and should be construed in favor of coverage and (2) Singh's experience with his New-York-issued Class E operator's license qualifies as CDL experience pursuant to the Policy because it allowed him to operate a vehicle for commercial purposes. As an initial matter, we note that Appellants argued below that the phrase "commercial driver's license" was ambiguous but argue

on appeal only that the word "commercial" is. Appellants would have us take the word "commercial" out of its relevant context, but because the term "commercial driver's license" is a term of art with a specific statutory definition, we decline the invitation.

[9] We conclude that the Policy term "commercial," specifically as used in the term "commercial driver's license," is not ambiguous and that a New-York-issued Class E operator's license is in no way equivalent to a CDL. While the Policy does not define the word "commercial" or the term "CDL," "CDL" has a very specific meaning pursuant to New York and federal law. CDLs, far from authorizing an individual to operate any vehicle for any commercial purpose, do nothing more or less than authorize individuals to operate motor vehicles that belong to one of three classes: (1) combination vehicles weighing at least 26,001 pounds (*e.g.*, tractor-trailers), (2) straight vehicles weighing at least 26,001 pounds, and (3) vehicles designed to transport sixteen or more passengers or hazardous materials. 49 C.F.R. § 383.5, *see also* N.Y. Veh. & Traf. Law § 501-a(1) (providing that a CDL is "valid to operate any motor vehicle or combination of vehicles" with the exception of certain motorcycles).[3]

[10] It stands to reason that a Class E operator's license would also have to allow an individual to operate vehicles belonging to at least one of these classes—at the very least—if it is to be considered equivalent to a CDL. As it happens,

---

[3] Indeed, the statutory definitions of CDLs make no mention of commercial use at all, only the characteristics of the vehicles covered.

however, New York's Class E operator's license specifically *excludes* all of these types of vehicles. *See* N.Y. Veh. & Traf. Law § 501(2)(a)(iv) & (v) (providing that a Class E operator's license does not permit its holder to operate any vehicle (1) that weighs over 26,001 pounds, (2) is used to transport more than fourteen persons for hire, or (3) for which a hazardous materials endorsement is required). As used in the Policy term "CDL," the word "commercial" is not ambiguous, and Appellants' suggested interpretation that holding a Class E operator's license qualifies as CDL experience pursuant to the Policy is not reasonable. The trial court correctly concluded that Singh had not satisfied the Policy's experience requirements.[4]

## II.   Bad Faith

Appellants also contend that Underwriters denied their claim in bad faith. Indiana law has long recognized a legal duty implied in all insurance contracts that the insurer deal in good faith with its insured. *Erie Ins. Exch. v. Craighead*, 192 N.E.3d 195, 204 (Ind. Ct. App. 2022) (citing *Hoosier Ins.*, 745 N.E.2d at 310), *trans. denied*. The first essential element of any bad-faith claim against an insurer, however, is breach of the insurance contract. *See Knight v. Ind. Ins. Co.*, 871 N.E.2d 357, 362 (Ind. Ct. App. 2007) ("The trial court properly concluded that the Insurer's denial of coverage did not constitute a breach of the contract and thus there was no viable bad faith or punitive damages claim."). Because

---

[4] Because we have concluded that Singh had not had the required two years of CDL experience when Pious hired him, we need not address Appellants' argument that alleged ambiguity in the phrase "driving similar equipment to that insured under this Policy" requires us to find coverage. Appellants' App. Vol. III p. 63.

we have concluded that Underwriters did not breach the Policy in denying coverage, Appellants' bad-faith claim must also fail.

[12]    We affirm the judgment of the trial court.


Altice, C.J., and Felix, J., concur.


ATTORNEYS FOR APPELLANTS

Craig C. Siebe
Jonathan L. Albright, Jr.
Nickloy, Albright & Gordon LLP
Noblesville, Indiana

ATTORNEYS FOR APPELLEES CERTAIN UNDERWRITERS AT LLOYD'S, LONDON

Edward M. O'Brien
Katherine E. Trapp
Wilson Elser Moskowitz Edelman & Dicker LLP
Louisville, Kentucky

Edward A. DeVries
Philip G. Rizzo
Wilson Elser Moskowitz Edelman & Dicker LLP
Merrillville, Indiana